UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHEILA L. CREWE,

        Plaintiff,

        v.                                   **DECISION AND ORDER**
                                                       17-CV-1309S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.        Plaintiff Sheila L. Crewe brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed applications for DIB and SSI with the Social Security Administration ("SSA") on June 26, 2014. (R.[1] at 10, 183-199). Plaintiff alleged disability since October 1, 2013 due to epilepsy, herniated discs in neck, asthma, depression, and anxiety. (R. at 75, 87). Plaintiff's applications were denied (R. at 99-113), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 115).

        3.        On April 7, 2017, ALJ John L. Melanson held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert ("VE") Warren Maxim appeared and testified. (R. at 33-52, 296). At the time of the hearing, Plaintiff was 36

---

[1] Citations to the underlying administrative record are designated as "R."

years old (R. at 75), with a 12th grade education and past work experience as a retail cashier, call center customer service representative, housekeeper, and resident counselor. (R. at 38-39, 224).

4. ALJ Christine Cutter considered the case *de novo* and, on June 14, 2017, issued a written decision denying Plaintiff's applications for benefits. (R. at 10-23). On October 16, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1-6). Plaintiff filed the current action, challenging the Commissioner's final decision,[2] on December 15, 2017. (Docket No. 1).

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 12, 16). Plaintiff filed a response on September 24, 2018 (Docket No. 17), at which time this Court took the matter under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where

---

[2] The ALJ's June 14, 2017 decision became the final decision of the Commissioner of Social Security on this matter when the Appeals Council denied Plaintiff's request for review.

evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not,

3

> the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 1, 2013. (R. at 12). At step two, the ALJ found that Plaintiff has

the severe impairments of cervical degenerative disc disease and seizure disorder.  Id. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 15).

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with certain exceptions:

> [Plaintiff] can occasionally lift up to 10 pounds; stand or walk for 2 out of 8 hours a day; sit for 6 out of 8 hours a day; only occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; never perform overhead reaching with the right upper extremity; frequently reach in all other directions bilaterally; and frequently handle and finger bilaterally. [Plaintiff] must avoid hazards, including unprotected heights and dangerous machinery, and concentrated respiratory irritants.

(R. at 16).

13. At step four, the ALJ found Plaintiff is capable of performing past relevant work as a call center representative.  (R. at 22).  Accordingly, the ALJ found that Plaintiff is not disabled.  Id.

14. Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ (1) failed to evaluate the severity of Plaintiff's migraine headaches at step two; (2) failed to properly assess Listing 11.02; and (3) failed to include limitations in Plaintiff's RFC which would result in a favorable determination. (Docket No. 12 at 18-25).  For the reasons that follow, remand is warranted.

15. Plaintiff contends that the ALJ's "failure to consider Plaintiff's migraine headaches at step two constitutes reversible error due to the omission of [consideration

of] the combined effect with her seizure disorder at step three as well as the failure to include any related limitations in the RFC assessment." (Docket No. 12 at 19).

16. At step two of the sequential evaluation process, an ALJ must consider "whether the claimant has a 'severe impairment' which significantly limits [her] physical or mental ability to do basic work activities." Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*) (quotations in original); see also 20 C.F.R. § 404.1520(c), 416.920(c).

17. "The Second Circuit has held that step two's 'severity' requirement is *de minimis*, meant only to screen out the weakest of claims." Faison v. Berryhill, 2017 U.S. Dist LEXIS 132832, *5 (W.D.N.Y. Aug. 2017) (citing. Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995)); see also Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). This "is not a demanding standard." McHugh v. Astrue, 2013 U.S. Dist. LEXIS 110412, *25, 2013 WL 4015093 (W.D.N.Y. Aug. 2013) (remanding for a renewed severity determination where "[t]he present record strongly suggests that [the claimant's] seizure disorder and migraine headaches are 'severe impairments' for purposes of step two").

18. "Further, the ALJ 'is required to "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity" to establish eligibility for Social Security benefits.'" Buck v. Colvin, 2014 U.S. Dist. LEXIS 11693 at *29, 2014 WL 338841 (W.D.N.Y. Jan. 2014) (quoting Burgin v. Astrue, 348 F. App'x 646, 647 (2d Cir. 2009) (alteration in original) (quoting 20 C.F.R. § 404.1523)); see also Thompson v. Astrue, 416 F. App'x 96, 97 (2d Cir. 2012) (summary order) (remand required where "the ALJ examined [claimant's] mental and physical impairments separately, and failed to evaluate

all of the impairments together"); Taylor v. Astrue, 2012 U.S. Dist. LEXIS 57277 at *5; 2012 WL 1415410 (N.D.N.Y. Apr. 24, 2012) (remand required where "the ALJ failed to mention [claimant's] wrist impairment at all in discussing severity and only briefly acknowledged the impairment" in the RFC determination); Hernandez v. Astrue, 814 F. Supp. 2d 168, 185 (E.D.N.Y. 2011) ("The ALJ's failure to consider the effects of plaintiff's combined impairments in every step of the five-step sequential process [...] requires remand.").

19. In this case, it is undisputed that Plaintiff has been diagnosed with and treated for migraine headaches, an impairment not described in the Listings. Social Security regulations provide that "in any case in which an individual has a medically determinable impairment that is not listed, an impairment that does not meet the requirements of a listing, or a combination of impairments no one of which meets the requirements of a listing, we will consider medical equivalence." 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 1.00(H)(4).

20. The Social Security Program Office Manual System ("POMS") provides guidance on how the Agency determines medical equivalence. POMS § DI 24505.015, as amended effective March 29, 2017, states that medical equivalence—for unlisted impairments and for combinations of impairments, none of which meets a listing—is determined by a comparison with "the most closely analogous listed impairment." Despinis v. Comm'r SSA, 2017 U.S. Dist. LEXIS 71270, *8 (D. Or. May 2017); see www.lb7.uscourts.gov/documents/115-cv-17401.pdf (last visited April 16, 2019).

21. POMS § DI 24505.015 provides example rationales for medical equivalence determinations, including the following example involving chronic migraine headaches:

> A claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headache with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her ADLs. The claimant takes medication as her doctor prescribes. The findings of the claimant's impairment are very similar to those of 11.02, Epilepsy, Dyscognitive seizures. Therefore, 11.02 is the most closely analogous listed impairment. Her findings are at least of equal medical significance as those of the most closely analogous listed impairment. Therefore, the claimant's impairment medically equals listing 11.02.D.1.

Despinis at *9 (quoting POMS DI 24505.015).

22. "POMS § DI 24505.015 appears to have been superseded by POMS § DI 24508.10 and is no longer available on the Social Security Administration's website." Worley v. Berryhill, 2019 U.S. Dist. LEXIS 44762, *14; 2019 WL 1272540 (E.D.N.C. Feb. 2019) (citing David G. v. Berryhill, No. 17-CV-3671-HB, 2018 U.S. Dist. LEXIS 163034, *14, 2018 WL 4572981 (D. Minn. Sept. 24, 2018); see S.S.A., POMS, https://secure.ssa.gov/apps10/poms.nsf/chapterlist!openview&restricttocategory=04.

23. Current policy, effective February 13, 2018, also states that medical equivalence for an unlisted impairment is determined by using "the most closely analogous Listing." POMS § DI 24508.10 (Impairment or Combination of Impairments Equaling a Listing - Medical Equivalence), available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424508010 (last visited April 17, 2019). However, POMS § DI 24508.10 does not specifically discuss migraine headaches. Id.

24. In this case, there is no dispute over the fact that Plaintiff was treated for headaches and migraines during the claimed disability period. Defendant acknowledges

8

that Plaintiff's treatments included trigger point injections and nerve blocks as well as prescription and over-the counter medications. (Docket No. 16 at 13-14).

25. At step two, the ALJ found Plaintiff's cervical degenerative disc disease and seizure disorder to be severe impairments but makes no mention of headaches. (R. at 12-15). This is troubling because the medical record indicates that Plaintiff's headaches are frequently linked with one, or both, of these severe impairments (*e.g.* R. at 397 "[Plaintiff] returns today for reevaluation of her seizures, headaches, and cervicalgia"), yet is largely silent as to combined effect(s) or causal relationship(s).

26. This omission continues through step three, where the ALJ determined that Plaintiff "does not have an impairment *or combination of impairments* that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 15-16) (emphasis added).

27. Here, the ALJ noted that "[s]pecific consideration has been given to the applicable listings under […] section[] 11.00, Neurological Disorders," but found that "[Plaintiff's] seizure disorder does not meet medical listing 11.02, epilepsy" because "[a]s detailed below, [Plaintiff's] seizures have been generally well controlled with medication, and they have not occurred with the frequency required to meet this listing." (R. at 15-16). Notably absent from this analysis of Listing 11.02 is any mention of headaches or migraines either individually or in combination with other impairments. Id.

28. After step three, without having conducted an equivalency analysis or making any severity determination with respect to Plaintiff's migraine headaches, the ALJ proceeded to a determination of Plaintiff's RFC. (R. at 16-22).

29. As Defendant correctly notes, "Plaintiff mentioned headaches to the consultative examiners." (Docket No. 16 at 13). On August 28, 2014, consulting physician Hongbiao Liu noted that Plaintiff reported a history of migraine headaches with episodes "three times a month." (R. at 427). Dr. Liu diagnosed migraine headaches as well as anxiety and depression, chronic neck pain, and a history of seizures and asthma, and opined that Plaintiff's prognosis was "stable." (R. at 430).

30. In determining Plaintiff's RFC, the ALJ gave "partial weight" to Dr. Liu's physical assessment. (R. at 21). In particular, the ALJ gave Dr. Liu's opinion "great consideration in formulating [Plaintiff's] environmental limitations relating to her seizure disorder and nonsevere asthma." Id. However, the ALJ noted that after Dr. Liu's 2014 physical examination, Plaintiff's cervical spine symptoms returned and "ultimately required C4-C6 fusion in September, 2016." Id. Thus, the ALJ found that "more restrictive exertional, postural, reaching, and manipulative limitations" were warranted. Id. Dr. Liu's diagnosis of migraine headaches is not mentioned. Id.

31. This is not to suggest that the ALJ's decision is entirely devoid of any mention of Plaintiff's headaches. In the RFC discussion, the ALJ notes that Plaintiff may "possibly" experience "a headache if she hit her head during [a] seizure." (R. at 17-18). Headaches are mentioned a second time when the ALJ points out that Plaintiff's headaches were "much improved" following "an uncomplicated and successful anterior discectomy and fusion of C5-C6 and C6-C7 with 3-level anterior cervical plating." Id.

32. Further, the ALJ notes that Plaintiff "underwent trigger point injections, which 'she did respond to well.'" (R. at 18) (quoting R. at 642). This quote, seemingly

relied on by the ALJ to infer clear improvement in Plaintiff's headaches in response to treatment, is drawn from a June 7, 2016 follow-up visit at DENT Neurologic Institute. Id.

33. However, the sentence that immediately follows the quoted portion states, "[u]nfortunately, [Plaintiff] presents today due to worsening neck pain, right shoulder pain, tension headaches, migraines, and seizures." Id. The report further notes that "[Plaintiff] continues to have headaches on a daily basis […] mostly […] after dinner," and that the headaches "are associated with light sensitivity." Id. The ALJ does not address this reported exacerbation in symptoms at all. (R. at 18).

34. The ALJ also failed to consider Plaintiff's testimony about her migraine headaches. At the hearing, Plaintiff testified that trigger point injections and nerve blocks are effective in preventing her migraines for "about a month-and-a-half," before they "wear off," but she is "only allowed those treatment[s] every three months." (R. at 45). Plaintiff further stated that when those treatments lose efficacy, she experiences migraines "every night," "usually start[ing] around dinnertime" and that the migraines affect her sleep patterns because they "make[] it difficult to fall asleep." (R. at 45-46). Asked to explain her "level of migraine," Plaintiff responded, "I have to have the room completely dark and quiet, I have to keep a cool cloth over my eyes, I usually vomit when I have them." Id.

35. Defendant argues that the ALJ's failure to consider Plaintiff's migraine headaches at steps two and three is harmless error because (1) substantial evidence supports a finding that Plaintiff's migraines are not severe; and (2) the ALJ "considered the effect of all of Plaintiff's impairments – including the non-severe impairments – on her ability to work." (Docket No. 16 at 12-15).

36. Defendant contends that "substantial evidence shows that [Plaintiff's] headaches imposed no significant limitations on her ability to work and, thus, were not severe." Id. at 12. In support, Defendant points out that "Plaintiff's headaches were a longstanding impairment that she had since childhood" and "[t]he record shows that Plaintiff worked successfully during several years despite her headaches." Id. at 14. Defendant also cites evidence of Plaintiff's positive response to treatments and notes that indicate her headaches became "stable" and were "well-controlled." Id.

37. Referencing Plaintiff's Disability Report (R. at 223) and application for benefits, Defendant notes, "it is telling that [Plaintiff] did not list headaches as one of the conditions that limited her ability to work." Id. at 13. Defendant further argues that because Plaintiff experienced headaches "mostly 'after dinner,'" "Plaintiff's headaches would not generally affect her during the normal workday." Id. (quoting R. at 44).

38. Each of these points is relevant to an analysis of the severity of Plaintiff's headaches or migraines. An history of proven ability to work despite headaches would certainly weigh against a finding that such headaches are a severe impairment.

39. On the other hand, the fact that Plaintiff experiences headaches "usually in the evening" may support her disability claim. It is certainly plausible that headache-induced lack of sleep could have more than a minimal effect Plaintiff's ability to perform basic daytime work activities on a sustained basis.

40. Regardless of the validity of Defendant's arguments, the fact remains that this Court is not tasked with deciding whether substantial evidence supports a finding that Plaintiff's headaches are not severe, because the ALJ did not make such a determination, nor did she present any rationale for failing to do so.

41. "A reviewing court 'may not accept appellate counsel's *post hoc* rationalizations for agency action.'" Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 9 L. Ed. 2d 207, 83 S. Ct. 239 [1962]).

42. While it may be "telling" that Plaintiff did not list headaches among her allegedly disabling conditions, it is also telling that Defendant considers her headaches "a longstanding impairment." (Docket No. at 13-14).

43. Here, the ALJ's brief acknowledgment of Plaintiff's headaches in the RFC determination does not suffice as consideration of "the effect of all impairments, including non-severe impairments," as Defendant claims. (Docket No. 16 at 15). See Taylor at *5 (N.D.N.Y. Apr. 24, 2012).

44. Further, Plaintiff's impairment—for which she has received considerable treatment—is not described in the Listings, and contemporaneous Agency guidance suggests it should be compared with a closely analogous Listed impairment. POMS § DI 24505.015. However, the ALJ did not conduct even a cursory medical equivalence analysis.

45. Compounding the ALJ's error in this case is the fact that the ALJ gave "specific consideration" to a closely analogous listing, yet failed to address the unlisted impairment in that context. For these reasons, the ALJ's failure to consider Plaintiff's headaches at step two warrants remand.

46. Plaintiff also argues that the ALJ failed to properly assess Listing 11.02 and erred in failing "to include limitations in Plaintiff's RFC which would result in a favorable determination." (Docket No. 12 at 20-21). Upon remand, the ALJ is directed to consider

Plaintiff's headaches at steps two and three and to determine and explain whether the combined effect of Plaintiff's seizure disorder and headache impairments meets or medically equals Listing 11.02.  Plaintiff's third argument need not be addressed, as the ALJ's duty is to make evidence-based determinations about the limiting effects of a claimant's impairments on her ability to perform work, not to include limitations that mandate a finding of disability.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 16) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      April  25, 2019
            Buffalo, New York


                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Judge